UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Susan Mead,

      Plaintiff,

v.                                       Civil Action No. 5:13-cv-71

Commissioner of Social Security,

      Defendant.

## REPORT AND RECOMMENDATION
(Docs. 4, 5)

Plaintiff Susan Mead brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Mead's motion to reverse the Commissioner's decision (Doc. 4), and the Commissioner's motion to affirm the same (Doc. 5). For the reasons stated below, I recommend that Mead's motion be GRANTED, in part; the Commissioner's motion be DENIED; and the matter be REMANDED for further proceedings and a new decision.

## Background

Mead was 50 years old on her alleged disability onset date of February 3, 2001. She has a master's degree, and was a marketing executive at a large financial services company located in Minneapolis, Minnesota from approximately 1978 through 2000.

(AR 300.) Mead stopped working in December 2000, when her company was bought out by another company and she opted to accept an early retirement package rather than move to another office. (AR 371, 506.) Thereafter, she tried doing some light volunteer work on a part-time basis, but found she did not have sufficient endurance for the work and it was too painful. (AR 372, 818.)

    Mead is married and has two grown children. She has a long history of pain in her neck, right shoulder/arm, and upper back. (AR 469, 506.) The pain is most bothersome when she is sitting for longer than approximately 20 minutes. A 2001 MRI of her neck revealed "[m]oderately severe multilevel degenerative disc disease of the cervical spine." (AR 471.) A 2003 radiology report documented "[m]alalignment of the cervical spine with severe degenerative changes." (AR 509.) To address her pain, Mead takes Advil, meditates, sits in a recliner, and lies down periodically throughout the day. (AR 821–26.) In addition, following the recommendations of her doctors, she stays active, engaging in activities like regular exercise, weightlifting, walking, horseback riding, gardening, doing light housework, and knitting. (AR 469, 709, 823–26.) She has tried a variety of medications, as well as steroid injections, acupuncture, yoga, massage, and other therapies, to alleviate her pain. (AR 506, 822, 828.) Although some of these therapies have lessened her pain, none has relieved it completely. (AR 822, 828.)

    In December 2003, Mead protectively filed an application for social security disability insurance benefits. Therein, she alleges that she became unable to work as a result of her cervical degenerative disc disease. (AR 299.) She states that she "[c]annot sit or work at a computer for more than a couple of hours (max.) [and] [c]annot stand in

one position for more than 1/2 hour.  Sitting or standing without moving is painful after 10 minutes." (*Id.*)  She further states that she stopped working because the "[p]ain and discomfort of sitting and using [her] right arm was too great." (AR 300.)  The ALJ accurately summarized Mead's application in his decision: "The primary issue in [Mead's] claim is the nature and severity of [her] pain" and "[its] impact . . . [on] her ability to sustain activity." (AR 27.)

Mead's application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  Thereafter, four administrative hearings were held due to multiple remands of the case by the Appeals Council for substantive reasons and one remand because "the record upon which the [ALJ] based the decision could not be located." (AR 195; *see* AR 158–90.)  The fourth and most recent administrative hearing was conducted on October 10, 2012 by Administrative Law Judge ("ALJ") Paul Martin. (AR 807–52.)  Mead appeared and testified at the hearing, and was represented by an attorney.  In addition, medical expert Dr. Louis Fuchs and vocational expert Louis Laplante testified.  On December 28, 2012, the ALJ issued a decision finding that Mead was not disabled under the Social Security Act from her alleged onset date of February 3, 2001 through her date last insured of December 31, 2006. (AR 19–42.)  Thereafter, the Appeals Council denied Mead's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 10–12.)  Having exhausted her administrative remedies, Mead filed the Complaint in this action on May 3, 2013. (Doc. 1.)

**ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that

there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Martin first determined that Mead had not engaged in substantial gainful activity from her alleged disability onset date through her date last insured. (AR 22.) At step two, the ALJ found that Mead had the following severe impairments: degenerative disc disease of the cervical spine and fibromyalgia. (*Id.*) Conversely, the ALJ found that Mead's depression did not rise to the level of a severe impairment, given that it did not have more than a minimal effect on her ability to perform basic work activities. (AR 22–25.) The ALJ stated that, although Mead had a history of treatment for depression, that treatment was "sporadic and inconsistent." (AR 24.) Moreover, the ALJ noted that Mead did not allege in her disability forms or testify at the administrative hearing that her depression affected her ability to perform activities. (AR 23–25.) At step three, the ALJ found that none of Mead's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 25.)

Next, the ALJ determined that Mead had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except that she "requires the opportunity to alternate between sitting and standing." (AR 25.) The ALJ added that Mead "should avoid forward flexion and static positioning of the neck." (*Id.*) Given this RFC, after a lengthy review of the extensive medical opinion evidence, the ALJ found that Mead was capable of performing her past relevant work as a vice president of marketing. (AR 41.) Relying

on the vocational expert's opinion, the ALJ specified that Mead "was able to perform [this job] as actually performed." (*Id.*) The ALJ concluded that Mead had not been under a disability from her alleged disability onset date of February 3, 2001 through her date last insured of December 31, 2006. (AR 42.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d

Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Mead argues that substantial evidence, including the opinions of treating and examining physicians, demonstrates that she would need to take breaks from work during the course of a workday, and that the ALJ erred in failing to account for this requirement in his RFC determination. (Doc. 4 at 19–23.) Mead further argues that the ALJ erred in finding that Mead was less than credible, placing too much emphasis on her ability to engage in daily exercise and other physically exerting activities. (*Id.* at 23–24.)

For the reasons explained below, I agree with Mead, and find that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ erred in his analysis of the medical opinions. I further find little support for the Commissioner's claim that there is a "lack of . . . objective medical evidence" to corroborate Mead's claims. (Doc. 5 at 15.) As noted above, a 2001 MRI revealed "[m]oderately severe multilevel degenerative disc disease of the cervical spine" (AR 471), and a 2003 radiology report documented "[m]alalignment of the cervical spine with severe degenerative changes" (AR 509). Referring to these reports, Mead's treating orthopedic

7

surgeon, Dr. Elizabeth Ames, stated that Mead had "multiple levels of end[-]stage disc degeneration with posterior deformation." (AR 507.)

The Commissioner attempts to discount the ALJ's errors, including his contradictory analysis of Dr. Kevin Sheth's opinion, by citing to Mead's extensive daily activities, including horseback riding, yoga, and gardening. The Court agrees that these activities are substantial, and considerably more than the typical disability claimant is able to do. They do not, however, cloak the ALJ's legal errors: the ALJ was still required to follow the treating physician rule and give a proper RFC determination, as discussed below.

## I.   RFC Determination and Analysis of the Medical Opinions

The ALJ's RFC determination states that Mead could perform "light work," but required "the opportunity to alternate between sitting and standing" and "should avoid flexion and static positioning of the neck." (AR 25.) The ALJ should have specified how frequently Mead would need to shift between sitting and standing. Social Security Ruling 96-9p states as follows:

> **Alternate sitting and standing:** An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1997) (emphasis added)[1]. More importantly, the ALJ should have explicitly considered the opinions of Mead's medical providers that Mead not only needed to alternate between sitting and standing, but also needed to take breaks away from her desk. Multiple treating and consulting providers, including Mead's treating primary care physician, Dr. Hannah Rabin, and consulting neurologist, Dr. Sheth, opined that Mead could not sit or stand for prolonged periods, *and required frequent breaks*. (*See, e.g.*, AR 492, 608–09, 714.) The ALJ's analysis of these opinions was inadequate.

In May 2009, after reviewing Mead's medical records, Dr. Sheth met with Mead and prepared an Independent Medical Examination report at the request of the administrator of Mead's employer-provided disability plan. (AR 709–17.) In the report, Dr. Sheth stated that Mead's cervical MRI demonstrates "widespread degenerative change at the C3-C7 levels with osteophytes, disc bulges, and foraminal stenosis" (AR 711); and opined that Mead's "symptoms of pain and referred cramping are supported by the reports of her imaging findings and complaints that are typical for patients with severe degenerative disease" (AR 713). Dr. Sheth found that "[Mead's] level of activity did seem consistent [with] her reported level of pain," and that "[h]er complaints were consistent as documented by multiple health care providers over th[e relevant] time

---

[1] Although they are not given the force and effect of law, Social Security Rulings are entitled to deference, unless they are clearly erroneous or inconsistent with the Social Security Act. *See Walker v. Sec'y of Health and Human Servs.*, 943 F.2d 1257, 1259–60 (10th Cir. 1991).

period." (*Id.*)[2] He continued: "While [Mead's] spine disease and symptoms of pain may not prevent her from performing all [sedentary] tasks per se, they can certainly be exacerbated by periods of prolonged sitting." (*Id.*)  Dr. Sheth concluded that Mead would be able to perform sedentary tasks only "for limited periods of time, likely in the 30–60 minute range, with opportunities to take 30–60 minute breaks from sitting." (AR 714.)  In response to questions from the plan administrator, Dr. Sheth clarified that Mead would not need to lie down during these breaks, but rather, "could stand or walk." (AR 709.)  Dr. Sheth further clarified that, if Mead was given a sit/stand workstation with a phone headset and "was allowed to take breaks from prolonged sitting," he would be optimistic that she could return to her prior employment.  (AR 710.)

It is unclear whether the ALJ afforded "moderate" or "significant" weight to Dr. Sheth's significant and detailed opinion.  (AR 39.)  The ALJ first states that he "give[s] [Dr. Sheth's] opinion moderate weight," and then later (in the same paragraph) states that he "give[s] Dr. Sheth's opinion significant weight." (*Id.*)  There is no explanation for this apparent contradiction, and none can be gleaned from the ALJ's decision.  The Commissioner argues: "it appears that the ALJ afforded Dr. Sheth's opinion significant weight in general, but afforded moderate weight to the particular restriction regarding

---

[2] Dr. Sheth explained:

> The important thing to remember is that [Mead's] symptoms and level of activity were dynamic which can often be the case in similar scenarios.  Sitting or lying in certain positions for an extended period of time may exacerbate symptoms.  Patients may need to change or avoid those positions.  In the absence of such exacerbations, their level of activity may be quite full.

(*Id.*)

10

Ms. Mead's breaks from sitting, that would include standing and walking around for 30 to 60 minutes at a time." (Doc. 5 at 8.) This rationale is not apparent, however, from the ALJ's decision, and the Commissioner may not substitute her own rationale when the ALJ has failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (internal quotation marks omitted). Furthermore, if the ALJ's decision implies, as the Commissioner argues, that he afforded significant weight to Dr. Sheth's opinion "in general," this is inconsistent with the ALJ's credibility finding because, as noted above, Dr. Sheth opined (1) that Mead's symptoms are supported by objective medical data and typical of patients with severe degenerative disease, and (2) that her level of activity seemed consistent with her reported level of pain (AR 713).

     The ALJ also erred in his analysis of the opinions of treating physician Dr. Rabin, who began treating Mead in July 2002. (AR 479.) In February 2004, Dr. Rabin opined that Mead was "clearly incapable of performing a sedentary job given her multiple areas of pain including neck, shoulder, arms[,] and hands." (AR 492.) Dr. Rabin stated that she agreed with occupational therapist Diane Aja's Functional Capacity Evaluation (*id.*), which stated that Mead could not do full-time work but could do part-time work "in a job that minimized sitting and allowed her to walk and stand as needed" (AR 542). A little over a year later, in July 2005, Dr. Rabin opined that Mead could sit for less than two hours in a workday, required a job that would permit her to shift positions between sitting and standing or walking at will and take unscheduled breaks during the workday. (AR 608.) Dr. Rabin specified that these unscheduled breaks would need to occur every 30 to

11

60 minutes, and would need to last 5 to 15 minutes at a time. (AR 608–09.)

Despite the ALJ's recognition that Dr. Rabin was "a treating physician with a lengthy treating history," the ALJ gave "little weight" to her opinions. (AR 38.) Under the treating physician rule, a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well[]supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993). When a treating physician's opinion is not given controlling weight, the ALJ must consider the regulatory factors in determining how much weight is appropriate, *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw*, 221 F.3d at 134), and must "give good reasons" for the weight afforded to that opinion, *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted).

The ALJ defended his decision to give little weight to Dr. Rabin's opinions by stating that they are not well supported by Dr. Rabin's own treatment notes and are inconsistent with other substantial evidence in the record, particularly Mead's vigorous activity level. (AR 38.) The ALJ stated that Dr. Rabin's treatment notes "do not describe [Mead] as presenting fatigued, uncomfortable, or in pain." (*Id.*) As pointed out by Mead, this description of Dr. Rabin's treatment notes is inaccurate. A September 2003 note states that Mead presented for "[o]ngoing sleepiness and fatigue which has been longstanding." (AR 488.) Other of Dr. Rabin's notes state that Mead suffered from "chronic pain," "chronic neck pain," "[n]eck pain for many y[ea]rs," and "ongoing neck

12

and right shoulder pain." (AR 479, 485, 498.)  Additionally, Dr. Rabin's opinions are consistent with those of Dr. Sheth, and those of occupational therapist Diane Aja (AR 541–42), Dr. Mark Bucksbaum (AR 675), and Dr. Lucy Miller (AR 803, 805), all of whom treated or examined Mead.

Instead of relying on the opinions of the treating and examining providers, the ALJ afforded "significant weight" to the opinions of non-examining agency consultant Dr. Christine Conley.  (AR 40.)  In January 2005, based on her review of portions of the record, Dr. Conley opined that Mead could sit for about 6 hours in an 8-hour workday but would have to periodically alternate sitting and standing to relieve pain or discomfort.  (AR 557.)  Dr. Conley specified that Mead could sit for only about 30 minutes at a time, taking 1- to 2-minute standing breaks to relieve neck stiffness.  (AR 559.)  Dr. Conley found that Mead's credibility regarding her symptoms was poor because, despite her allegation that she could stand for only 30 minutes, she is "very active."  (AR 563.)  Dr. Conley stated: "she hikes frequently, does yoga four times a week, has a personal trainer with whom she works out several times a week, does weightlifting for strength and elliptical trainer for cardiovascular health[,] [and [v]olunteers at [a] gallery."  (*Id.*)

Generally, where, as here, there are conflicting opinions between treating and consulting sources, the "consulting physician's opinions or report should be given limited weight." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990).  This is particularly true where the consultant did not examine the claimant and made their opinions without considering the relevant treating source opinions.  *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally

13

examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011) (where it is unclear whether agency consultant reviewed all of claimant's relevant medical information, consultant's opinion is not supported by evidence of record as require to override treating physician opinion).

Applied here, I find that the ALJ should have given less weight to Dr. Conley's opinions because, as the ALJ acknowledged (AR 40), not only did Dr. Conley never meet with or examine Mead, but she also failed to review the other relevant medical opinions, which differed greatly from hers. Of the many doctors providing opinions on Mead's claim, Dr. Conley had the least amount of information about Mead and her medical conditions, given that she did not treat or examine Mead; did not attend the administrative hearing; and did not have access to the medical opinions submitted after her review of Mead's claim, including Dr. Rabin's July 2005 opinion and Dr. Sheth's May 2009 opinion, discussed above. These factors should have weighed more heavily against giving Dr. Conley's opinions significant weight.

## II. Credibility Assessment and Consideration of Daily Activities

Next, Mead argues that the ALJ's assessment that Mead is "not entirely credible" (AR 26) is inconsistent with the ALJ's reliance on Dr. Sheth's medical opinion that her activity level is consistent with her medical condition and allegations (AR 713). (Doc. 4 at 23–24.) For the reasons explained above, I agree. Moreover, the ALJ's credibility assessment largely relies on Mead's high activity level, but Mead correctly asserts (*id.* at 24) that several of Mead's medical providers recommended that she engage in activities like cardiovascular exercise and

14

weightlifting to reduce her pain and prevent further deterioration of her condition (*see, e.g.*, AR 489–90, 538, 597, 675, 823). Also noteworthy, the Second Circuit has held that eligibility for disability benefits is not contingent on a claimant being rendered completely incapacitated. *See Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) ("[T]he Social Security Act is a remedial statute, to be broadly construed and liberally applied[;] . . . [thus,] a claimant need not be an invalid to be found disabled under . . . the Social Security Act.") (citation and internal quotation marks omitted). On remand, after conducting a new analysis of the medical opinions, including those of Drs. Sheth, Rabin, and Conley, the ALJ should reassess Mead's credibility.

## III. Remand Solely for Calculation of Benefits

Finally, Mead seeks a remand solely for calculation of benefits. But in cases where there are gaps in the administrative record or, as here, the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). I do not recommend that Mead's claim be remanded solely for a calculation of benefits because it is not clear that, once the ALJ follows the applicable law, he will not again determine that Mead was not disabled during the relevant period. It is possible that, after reassessing the medical opinions, formulating a new RFC, and posing the appropriate questions to a vocational expert at another administrative hearing, an ALJ may still conclude that Mead was not disabled during the alleged disability period, especially considering her robust daily activities. Moreover, despite Mead's statement that "[t]he claim is now almost a decade old" (Doc. 4 at 24), the length of time that a claim has been pending is not a ground for remanding for payment

of benefits. *Giddings v. Astrue*, 333 F. App'x 649, 655 (2d Cir. 2009) (although the court is "mindful of the often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay[,]" the duration that a claim has been pending "is not a sufficient basis to reverse and award . . . benefits: a decision to reverse and direct an award for benefits should be made only when . . . substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits") (citations and internal quotation marks omitted). Accordingly, a remand solely for calculation of benefits is not warranted.

## Conclusion

For these reasons, I recommend that Mead's motion (Doc. 4) be GRANTED, in part; the Commissioner's motion (Doc. 5) be DENIED; and the matter be REMANDED for further proceedings and a new decision in accordance with this ruling. On remand, the ALJ may determine that the medical opinions discussed herein should be afforded more, less, or the same weight as determined in the decision presently before the Court, but the ALJ must give good reasons in support of those determinations. Moreover, the ALJ should reassess Mead's credibility and reformulate his RFC based on his new conclusions regarding the proper weight to be afforded to the medical opinions, and explicitly considering the record evidence demonstrating that Mead requires periodic breaks from work, not merely the opportunity to alternate between sitting and standing. Once a new RFC is determined, the ALJ should pose appropriate hypothetical questions

to a vocational expert, and particularly inquire about whether Mead could do work other than her past relevant work as a vice president of marketing.

Dated at Burlington, in the District of Vermont, this 8th day of January, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).